**EXHIBIT 3**

# STANDARD FORM OF

# FIXED PRICE CONSTRUCTION CONTRACT

# BETWEEN

# THE DEKALB COUNTY BOARD OF EDUCATION

# AND

# LATCO CONSTRUCTION COMPANY, INC.
# [CONTRACTOR]

## G. D. O. E. PROJECT NO. 99-644-077

**PROJECT:**    CLARKSTON MIDDLE SCHOOL

**Project
Address:**    505 SOUTH HAIRSTON ROAD
DEKALB COUNTY, GEORGIA

**ARCHITECT:** R L BROWN & ASSOCIATES, INC.

**Architect's
Address:**    101 W. PONCE DE LEON AVENUE
DECATUR, GEORGIA 30030

# T A B L E   O F   C O N T E N T S

ARTICLE 1      DOCUMENTS INCORPORATED BY REFERENCE...................................1

ARTICLE 2      REPRESENTATIONS OF THE CONTRACTOR.....................................1
      2.1   Generally ..............................................................................................1

ARTICLE 3      CONTRACT CONSTRUCTION.........................................................1
      3.1   Intent and Interpretation ....................................................................1
      3.2   Ownership ..........................................................................................3

ARTICLE 4      CONTRACTOR'S PERFORMANCE ...................................................3
      4.1   Generally ...........................................................................................3

ARTICLE 5      TIME FOR CONTRACTOR'S PERFORMANCE ...................................4
      5.1   Time for Performance.........................................................................4
      5.2   Liquidated Damages for Delay ...........................................................4
      5.3   Substantial Completion ......................................................................4
      5.4   Time is of the Essence ......................................................................4

ARTICLE 6      FIXED PRICE AND CONTRACT PAYMENTS......................................4
      6.1   Contract Price.....................................................................................4
      6.2   Schedule of Values.............................................................................5
      6.3   Payment Procedures...........................................................................5
      6.4   Payments by Contractor......................................................................6
      6.5   No Acceptance of Work.......................................................................6
      6.6   Refusal to Make Payment ...................................................................6
      6.7   Untimely Payments.............................................................................6
      6.8   Inspection at Substantial Completion ..................................................7
      6.9   Final Completion.................................................................................7
      6.10 Final Inspection; Final Approval for Payment .......................................7
      6.11 Time for Final Completion; Liquidated Damages for Delay in Final Completion..........7
      6.12 Conditions Precedent to Final Payment ...............................................7
      6.13 Final Payment ....................................................................................8

ARTICLE 7      INFORMATION AND MATERIAL SUPPLIED BY THE OWNER ...................8
      7.1   Generally ...........................................................................................8
      7.2   Easements..........................................................................................8
      7.3   Contract Copies .................................................................................8

ARTICLE 8      CEASE AND DESIST ORDER ........................................................8

ARTICLE 9      DUTIES, OBLIGATIONS AND RESPONSIBILITIES OF THE CONTRACTOR..................9
      9.1   Generally ...........................................................................................9
      9.2   Warranty ..........................................................................................10
      9.3   Schedule for Completing Work .........................................................10

ARTICLE 10     INDEMNITY ..............................................................................10

ARTICLE 11     THE PROJECT ARCHITECT .........................................................11
      11.1 Architect...........................................................................................11

ARTICLE 12    CLAIMS BY THE CONTRACTOR ........................................................ 12
                    12.1 Generally ................................................................ 12
                    12.2 Delays Generally ................................................. 12
                    12.3 Weather Delays ................................................... 12

ARTICLE 13    SUBCONTRACTORS ........................................................................ 13

ARTICLE 14    CHANGE ORDERS ......................................................................... 13
                    14.1 Generally ............................................................... 13

ARTICLE 15    DISCOVERING AND CORRECTING DEFECTIVE OR INCOMPLETE WORK ............. 14
                    15.1 Work in Violation of Contract ............................... 14
                    15.2 Work in Conformity with Contract ...................... 14
                    15.3 Defective or Nonconforming Work ..................... 14
                    15.4 Duty to Correct Defective or Nonconforming Work ........... 14
                    15.5 Owner's Option ..................................................... 15

ARTICLE 16    TERMINATION BY THE CONTRACTOR ....................................... 15

ARTICLE 17    OWNER'S RIGHT TO SUSPEND CONTRACTOR'S PERFORMANCE .......... 15
                    17.1 Suspension .......................................................... 15
                    17.2 Compensation ...................................................... 15

ARTICLE 18    TERMINATION BY THE OWNER ................................................. 15
                    18.1 Termination for Convenience .............................. 15
                    18.2 Termination for Cause ......................................... 16
                    18.3 Termination Not Subject to Article 12 ................. 17

ARTICLE 19    INSURANCE ................................................................................... 17

ARTICLE 20    SURETY BONDS ........................................................................... 17

ARTICLE 21    PROJECT RECORDS ..................................................................... 17

ARTICLE 22    APPLICABLE LAW ......................................................................... 17

ARTICLE 23    SUCCESSORS AND ASSIGNS ...................................................... 18

EXHIBIT A     OCIP CONTRACTUAL ATTACHMENT

EXHIBIT B     LIQUIDATED DAMAGES SCHEDULE

This FIXED PRICE CONSTRUCTION CONTRACT (the "Contract") is made and entered into by and between THE DEKALB COUNTY BOARD OF EDUCATION (the "Owner") and LATCO CONSTRUCTION COMPANY, INC. (the "Contractor"). This Contract is executed under seal, and shall be effective on the date executed by the last party to execute it.

This Contract is for the construction of a project identified as CLARKSTON MIDDLE SCHOOL – BUILDING PACKAGE, SPLOST PROJECT No. 98-644-056 (the "Project").

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements stated herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

## ARTICLE 1

### DOCUMENTS INCORPORATED BY REFERENCE

This Contract includes this instrument, all exhibits hereto, the plans and specifications for the Project identified thereon as such, the Contractor's Bid, Special Conditions and all Addenda issued prior to execution of the Contract, plus the following (if any): completed and approved OCIP enrollment forms, all of which are hereby incorporated herein by reference and made a part hereof. Change Orders issued hereafter, and any other amendments executed by the Owner and the Contractor, shall become and be a part of this Contract. Documents not included or expressly contemplated in this Article 1 do not, and shall not, form any part of this Contract.

## ARTICLE 2

### REPRESENTATIONS OF THE CONTRACTOR

2.1     Generally.  In order to induce the Owner to execute this Contract and recognizing that the Owner is relying thereon, the Contractor, by executing this Contract, makes the following express representations to the Owner:

2.1.1     The Contractor is fully qualified to act as the contractor for the Project and has, and shall maintain, any and all licenses, permits or other authorizations necessary to act as the contractor for, and to construct, the Project.

2.1.2     The Contractor has visited, inspected and become familiar with the Project site and the local conditions under which the Project is to be constructed and operated.

2.1.3     The Contractor has received, reviewed and carefully examined all of the documents which make up this Contract, including, but not limited to, the plans and specifications, and believes them in all respects to be complete, accurate, adequate, consistent, coordinated and sufficient for construction.

## ARTICLE 3

### CONTRACT CONSTRUCTION

3.1     Intent and Interpretation.  With respect to the intent and interpretation of this Contract, the Owner and the Contractor agree as follows:

3.1.1     This Contract, together with the Contractor's and Surety's performance and payment bonds for the Project, constitute the entire and exclusive agreements between the parties with reference to the Project, and said Contract supersedes any and all prior discussions, communications,

representations, understandings, negotiations, or agreements. This Contract also supersedes any bid documents, but only to the extent that it is inconsistent therewith.

3.1.2    Anything that may be required, implied or inferred by the documents which make up this Contract, or any one or more of them, shall be provided by the Contractor for the Contract Price.

3.1.3    Nothing contained in this Contract shall create, nor be interpreted to create, privity or any other relationship whatsoever between the Owner and any person except the Contractor.

3.1.4    The specification herein of any act, failure, refusal, omission, event, occurrence or condition as constituting a material breach of this Contract shall not imply that any other, non-specified act, failure, refusal, omission, event, occurrence or condition shall be deemed not to constitute a material breach of this Contract.

3.1.5    The Contractor shall have a continuing duty to read, examine, review, compare and contrast each of the documents which make up this Contract, shop drawings, and other submittals. Each of the documents is complementary and shall be interpreted so that what is called for by one shall be as binding as if called for by all. Should the Contractor observe any conflicts, ambiguity, errors or omissions within the documents, he shall, by written notice, bring them to the Owner's and Architect's attention for decision and revision as soon as possible after originally observed and before proceeding with the affected Work. In the event of duplication or conflicts between the documents after the Contract has been executed, the most expensive method of work, materials and equipment shall be construed as the requirement, with a credit for all costs saved accruing to the Owner in the event the least expensive method of work is directed. The express or implied approval by the Owner or the Architect of any shop drawings or other submittals shall not relieve the Contractor of the continuing duties imposed hereby, nor shall any such approval be evidence of the Contractor's compliance with this Contract. The Owner has requested the Architect to only prepare documents for the Project, including the plans and specifications for the Project, which are accurate, adequate, consistent, coordinated and sufficient for construction. However, the Owner makes no representation or warranty of any nature whatsoever to the Contractor concerning such documents. The Contractor again hereby acknowledges and represents that it has received, reviewed and carefully examined such documents, believes them to be complete, accurate, adequate, consistent, coordinated and sufficient for construction, and that the Contractor has not, does not, and will not rely upon any representations or warranties by the Owner concerning such documents, as no such representations or warranties have been or are hereby made.

3.1.6    Plans are not intended to be scaled or to act as shop drawings.

3.1.7    In the event of any conflict, discrepancy, or inconsistency among any of the documents which make up this Contract, interpretation will be based on the following priority:

3.1.7.1  Addenda (if any), with those of later date having precedence over those of earlier date.

3.1.7.2  This Agreement.

3.1.7.3  Supplemental or Special Conditions (if any).

3.1.7.4  Specifications.

3.1.7.5 Plans, with the following priority:

(a) As between figures given on plans and scaled measurements, the figures shall govern.

(b) As between large scale plans and small scale plans, the large scale plans shall govern.

3.1.8   Whenever an item is specified or shown on the plans by detail or reference, it shall be considered typical for other items which are obviously intended to be the same even though not so designated or specifically named but do serve the same function in the building.

3.1.9   Any material specified by reference to the number, symbol, or title of a specific standard such as a Commercial Standard, a Federal Specification, a trade association standard, or other similar standard, shall comply with the requirements in the latest revision thereof and any amendment or supplement thereto in effect on the date indicated on the specifications, except as limited, or modified in such references.  The standards referred to, except as modified in the Contract, shall have full force and effect as though printed in the Contract.  The Contractor shall make itself aware of the contents of such standards and shall furnish the field office with one (1) full set of each.

3.1.10   If Owner elects to accept any items proposed by the Contractor as a substitution, the Contractor shall assume full responsibility for the proper performance of any substitution to the criteria set forth in the Contract and assume the costs of any changes in the Work which may be due to such substitution.

3.1.11   When a word, term, or phrase is used in this Contract, it shall be interpreted or construed first, as defined herein; second, if not defined, according to its generally accepted meaning in the construction industry; and third, if there is no generally accepted meaning in the construction industry, according to its common and customary usage.

3.1.12   The words "include", "includes", or "including", as used in this Contract, shall be deemed to be followed by the phrase, "without limitation".

3.1.13   Wherever the terms "necessary", "suitable", "as directed", "when directed", "satisfactory", "good and sufficient", "approved", or other general qualifying terms are used on the plans, they are deemed to be followed by the words "in the opinion of the Architect", or "by the Architect", as the case may be.

3.1.14   The terms "approval", "approved", "approved equal", "or equal", or "other approved", mean approved by the Architect.

3.2     <u>Ownership.</u>  The documents which make up this Contract, and each of them, as well as any other documents furnished by the Owner, shall remain the property of the Owner.  The Contractor shall have the right to keep one (1) copy of the Contract upon completion of the Project; provided, however, that in no event shall the Contractor use, or permit to be used, any portion or all of such Contract on other projects without the Owner's prior written authorization.

## <u>ARTICLE 4</u>

### CONTRACTOR'S PERFORMANCE

4.1     <u>Generally.</u>  The Contractor shall perform all of the Work required, implied or reasonably inferable from this Contract including, but not limited to, the following:

4.1.1   Construction of the Project.

4.1.2   The furnishing of required surety bonds and insurance.

4.1.3   The provision, and prompt payment therefor, of labor, supervision, services, materials, supplies, equipment, fixtures, appliances, facilities, tools, transportation, storage, power, fuel, heat, light, cooling, or other utilities, required for construction and all necessary building permits and other permits required for the construction of the Project.

4.1.4   The creation and submission to the Owner of detailed and comprehensive as-built drawings depicting all as-built construction.  Said as-built drawings shall be submitted to the Owner upon Final Completion of the Project and receipt of same by the Owner shall be a condition precedent to final payment to the Contractor.

## ARTICLE 5

## TIME FOR CONTRACTOR'S PERFORMANCE

5.1   Time for Performance.  The Contractor shall commence the performance of this Contract on the day the Contractor receives a written Notice to Proceed from the Architect or Owner, or such later date as may be set forth therein, and shall diligently continue its performance to and until Final Completion of the Project.  The Contractor shall accomplish Substantial Completion of the Project **within 427 calendar days from and including the date of receipt of the Notice To Proceed.**

5.2   Liquidated Damages for Delay.  The Contractor shall pay the Owner for each and every calendar day of unexcused delay in achieving Substantial Completion beyond the date set forth herein for Substantial Completion the sum indicated at EXHIBIT "B" attached hereto and by reference made a part hereof.  Any sums due and payable hereunder by the Contractor shall be payable, not as a penalty, but as liquidated damages representing an estimate of delay damages likely to be sustained by the Owner. When the Owner reasonably believes that Substantial Completion will be inexcusably delayed, the Owner shall be entitled, but not required, to withhold from any amounts otherwise due the Contractor an amount then believed by the Owner to be adequate to recover liquidated damages applicable to such delays.  If and when the Contractor overcomes the delay in achieving Substantial Completion, or any part thereof, for which the Owner has withheld payment, the Owner shall promptly release to the Contractor those funds withheld, but no longer applicable, as liquidated damages.

5.3   Substantial Completion.  The term "Substantial Completion", as used herein, shall mean that point at which, as certified in writing by the Architect, the Project is at a level of completion in strict compliance with this Contract such that the Owner can enjoy beneficial use or occupancy and can use or operate it in all respects, for its intended purpose.  Partial use or occupancy of the Project shall not result in the Project being deemed substantially complete, and such partial use or occupancy shall not be evidence of Substantial Completion.

5.4   Time Is Of The Essence.  All limitations of time set forth herein are material and are of the essence of this Contract.

## ARTICLE 6

## FIXED PRICE AND CONTRACT PAYMENTS

6.1   Contract Price.  The Owner shall pay, and the Contractor shall accept, as full and complete payment for the Contractor's timely performance of its obligations hereunder the fixed price of Thirteen Million Seventy One Thousand Seven Hundred Forty Six Dollars ($13,071,746.00), which is the Base Bid plus Alternates 2, 3, 4, and 5.  The price set forth in this Paragraph 6.1 shall constitute the Contract Price, which shall not be modified except by Change Order as provided in this Contract.

6.2     Schedule of Values.   Within ten (10) calendar days of the effective date hereof, the Contractor shall prepare and present to the Owner and the Architect the Contractor's Schedule of Values apportioning the Contract Price among the different elements of the Project for purposes of periodic and final payment.  The Contractor's Schedule of Values shall be presented in whatever format, with such detail, and backed up with whatever supporting information the Architect or the Owner requests.  The Contractor shall not front-end load its Schedule of Values by imbalancing it or by increasing any element thereof in excess of the actual cost, and any violation of this provision by the Contractor shall constitute a material breach of this Contract.  The Contractor's Schedule of Values will be utilized for the Contractor's Payment Requests but shall only be so utilized after it has been acknowledged in writing by the Architect and the Owner.

6.3     Payment Procedures.   The Owner shall pay the Contract Price to the Contractor in accordance with the procedures set forth in this Article 6.  On or before the 5th day of each month after commencement of performance, but no more frequently than once monthly, the Contractor may submit a Payment Request for the period ending the last day of the previous month.  Said Payment Request shall be in such format and include whatever supporting information as may be required by the Architect, the Owner, or both.  Therein, the Contractor may request payment for ninety percent (90%) of that part of the Contract Price allocable to Contract requirements properly provided, labor, materials and equipment properly incorporated in the Project, and materials or equipment necessary for the Project and properly stored at the Project site (or elsewhere if offsite storage is approved in writing by the Owner), less the total amount of previous payments received from the Owner.  Any payment on account of stored materials or equipment will be subject to the Contractor providing written proof that the Owner has title to such materials or equipment and that they are fully insured against loss or damage.  Moreover, any sums approved for stored materials shall be at actual cost and shall not include markup by Subcontractor or Contractor.  Actual cost means costs charged by the manufacturer or the distributor for the manufacturer and Payment Request shall include copies of invoices from the manufacturer or the distributor.

When fifty percent (50%) of the Contract Price, as it may be adjusted, is due and the manner of completion of the Work and its progress are reasonably satisfactory to the Architect and the Owner's Representative, the Owner shall withhold no more retainage.  If, after discontinuing the retention, the Architect determines that the Work is unsatisfactory or has fallen behind schedule, retention shall be resumed at the previous level.

Each Payment Request shall be signed by the Contractor and shall constitute the Contractor's representation that the quantity of work has reached the level for which payment is requested, that the Work has been properly installed or performed in strict compliance with this Contract, and that the Contractor knows of no reason why payment should not be made as requested.  Each Payment Request shall be accompanied by 8" x 10" photographs of good quality depicting the then-current status of the Project.

Thereafter, the Architect and the Owner's Representative shall review the Payment Request and may also review the Work at the Project site or elsewhere to determine whether the quantity and quality of the Work is as represented in the Payment Request and is as required by this Contract.  The Architect shall approve in writing the amount which, in the opinion of the Architect, is properly owing to the Contractor.  The Owner, after the approval of the Georgia Department of Education, shall make payment to the Contractor within thirty (30) days following the Architect's written approval of each Payment Request.  The amount of each such payment shall be the amount approved for payment by the Architect less such amounts, if any, otherwise owing by the Contractor to the Owner or which the Owner shall have the right to withhold as authorized by this Contract.  The Architect's approval of the Contractor's Payment Requests shall not preclude the Owner from the exercise of any of its rights as set forth in Paragraph 6.6 hereinbelow.  The submission by the Contractor of a Payment Request also constitutes an affirmative representation and warranty that all Work for which the Owner has previously paid is free and clear of any lien, claim, or other encumbrance of any person whatsoever.  As a condition precedent to payment, the Contractor shall, if required by the Owner, also furnish to the Owner properly executed

waivers of lien, in a form acceptable to the Owner, from all subcontractors, materialmen, suppliers or others having lien rights, wherein said subcontractors, materialmen, suppliers or others having lien rights, shall acknowledge receipt of all sums due pursuant to all prior Payment Requests and waive and relinquish any liens, lien rights or other claims relating to the Project site.  Furthermore, the Contractor warrants and represents that, upon payment of the Payment Request submitted, title to all Work included in such payment shall be vested in the Owner.

      6.4    Payments by Contractor.  When payment is received from the Owner, the Contractor shall immediately pay all subcontractors, materialmen, laborers and suppliers the amounts they are due for the Work covered by such payment.  In the event the Owner becomes informed that the Contractor has not paid a subcontractor, materialman, laborer, or supplier as provided herein, the Owner shall have the right, but not the duty, to issue future checks and payment to the Contractor of amounts otherwise due hereunder naming the Contractor and any such subcontractor, materialman, laborer, or supplier as joint payees.  Such joint check procedure, if employed by the Owner, shall create no rights in favor of any person or entity beyond the right of the named payees to payment of the check and shall not be deemed to commit the Owner to repeat the procedure in the future.

      6.5    No Acceptance of Work.  Neither payment to the Contractor, utilization of the Project for any purpose by the Owner, nor any other act or omission by the Owner shall be interpreted or construed as an acceptance of any Work of the Contractor not strictly in compliance with this Contract.

      6.6    Refusal to Make Payment.  The Owner shall have the right to refuse to make payment and, if necessary, may demand the return of a portion or all of the amount previously paid to the Contractor due to:

            6.6.1    The quality of a portion, or all, of the Contractor's Work not being in accordance with the requirements of this Contract.

            6.6.2    The quantity of the Contractor's Work not being as represented in the Contractor's Payment Request, or otherwise.

            6.6.3    The Contractor's rate of progress being such that, in the Owner's opinion, Substantial Completion or Final Completion, or both, may be inexcusably delayed.

            6.6.4    The Contractor's failure to use Contract funds, previously paid the Contractor by the Owner, to pay Contractor's Project-related obligations including, but not  limited to, subcontractors, laborers and material and equipment suppliers.

            6.6.5    Claims made, or likely to be made, against the Owner or its property.

            6.6.6    Loss caused by the Contractor.

            6.6.7    The Contractor's failure or refusal to perform any of its obligations to the Owner, including but not limited to, the Contractor's obligation to provide Safety and Loss Prevention per subparagraph 7.6 of the OCIP Contractual Attachment.

In the event that the Owner makes written demand upon the Contractor for amounts previously paid by the Owner as contemplated in this Paragraph 6.6 the Contractor shall promptly comply with such demand.

      6.7    Untimely Payments.  If within thirty (30) days from the date payment to the Contractor is due, the Owner, without cause or basis hereunder, fails to pay the Contractor any amounts then due and payable to the Contractor, the Contractor shall have the right to cease Work until receipt of proper payment after first providing ten (10) days written notice of its intent to cease Work to the Owner.

---

6.8     Inspection at Substantial Completion.   When Substantial Completion has been achieved, the Contractor shall notify the Owner and the Architect in writing and shall furnish to the Architect a listing of those matters yet to be finished.  The Architect will thereupon conduct an inspection to confirm that the Work is in fact substantially complete.  Upon its confirmation that the Contractor's Work is substantially complete, the Architect will so certify to the Owner and Contractor in writing and will therein set forth the date of Substantial Completion.  If the Architect, through its inspection, fails to find that the Contractor's Work is substantially complete, and is required to repeat all, or any portion, of its Substantial Completion inspection, the Contractor shall bear the cost of such repeat inspection(s) which cost may be deducted by the Owner from any payment then or thereafter due to the Contractor.  Guarantees and equipment warranties required by this Contract shall commence on the date of Substantial Completion.  Upon Substantial Completion, the Owner shall pay the Contractor an amount sufficient to increase total payments to the Contractor to one hundred percent (100%) of the Contract Price less any amounts attributable to liquidated damages, together with two hundred percent (200%) of the reasonable costs as determined by the Owner for completing all incomplete Work, correcting and bringing into conformance all defective and nonconforming Work, and handling any outstanding or threatened claims.

6.9     Final Completion.   "Final completion" means the completion of all Work required by, and in strict compliance with, the Contract, including start-up, testing, obtaining regulatory approvals from all applicable authorities, and all preparations necessary to operate the Project.

6.10    Final Inspection; Final Approval for Payment.   When the Project is finally complete and the Contractor is ready for a final inspection, it shall notify the Owner and the Architect thereof in writing.  Thereupon, the Architect will perform a final inspection of the Project.  If the Architect confirms that the Project is complete in full accordance with this Contract and that the Contractor has performed all of its obligations to the Owner hereunder, the Architect will furnish a final Approval for Payment to the Owner certifying to the Owner that the Project is complete and the Contractor is entitled to the remainder of the unpaid Contract Price, less any amount withheld pursuant to this Contract.  If the Architect is unable to issue its final Approval for Payment and is required to repeat its final inspection of the Project, the Contractor shall bear the cost of such repeat inspection(s), which costs may be deducted by the Owner from the Contractor's final payment.

6.11    Time for Final Completion; Liquidated Damages for Delay in Final Completion.   If the Contractor fails to achieve final completion within 30 days of the date of Substantial Completion, the Contractor shall pay the Owner one-tenth (1/10) of the sum indicated at EXHIBIT "B" per day for each and every calendar day of unexcused delay in achieving final completion beyond the date set forth herein for final completion of the Work.  Any sums due and payable hereunder by the Contractor shall be payable, not as a penalty, but as liquidated damages representing an estimate of delay damages likely to be sustained by the Owner.  When the Owner reasonably believes that final completion will be inexcusably delayed, the Owner shall be entitled, but not required, to withhold from any amounts otherwise due the Contractor an amount then believed by the Owner to be adequate to recover liquidated damages applicable to such delays.  If and when the Contractor overcomes the delay in achieving final completion, or any part thereof, for which the Owner has withheld payment, the Owner shall promptly release to the Contractor those funds withheld, but no longer applicable, as liquidated damages.

6.12    Conditions Precedent to Final Payment.   Prior to being entitled to receive final payment, and as a condition precedent thereto, the Contractor shall furnish the Owner, in the form and manner required by Owner, if any, with a copy to the Architect:

6.12.1  An affidavit that all of the Contractor's obligations to subcontractors, laborers, equipment or material suppliers, or other third parties in connection with the Project, have been paid or otherwise satisfied.

6.12.2   If required by the Owner, separate releases of lien or lien waivers from each subcontractor, lower tier subcontractor, laborer, supplier or other person or entity who has, or might have a claim against the Owner or the Owner's property.

6.12.3   Consent(s) of Surety to final payment.

6.12.4   All product warranties, operating manuals, instruction manuals and other record documents, drawings and things customarily required of the Contractor, or expressly required herein, as a part of or prior to Project closeout.

6.13   Final Payment.   The Owner shall, subject to its rights set forth in Paragraph 6.6 above, make final payment of all sums due the Contractor within ten (10) days of the approval by the Georgia Department of Education of the Architect's execution of a final Approval for Payment.

## ARTICLE 7

### INFORMATION AND MATERIAL SUPPLIED BY THE OWNER

7.1   Generally.   The Owner shall furnish to the Contractor, prior to the execution of this Contract, any and all written and tangible material in its possession concerning conditions below ground at the site of the Project.  Such written and tangible material is furnished to the Contractor only in order to make complete disclosure of such material as being in the possession of the Owner and for no other purpose.  By furnishing such material, the Owner does not represent, warrant, or guarantee its accuracy either in whole, in part, implicitly or explicitly, or at all, and shall have no liability therefor.  The Owner shall also furnish, if appropriate, the legal description of the Project site, and any required survey.

7.2   Easements.   The Owner shall obtain all required easements, and the like but not the building permit and other permits or fees required of the Contractor by this Contract, or permits and fees customarily the responsibility of the Contractor.

7.3   Contract Copies.   The Owner will provide the Contractor two (2) copies of the complete Contract.  The Contractor will be charged, and shall pay the Owner, Four Hundred Dollars ($400.00) per additional copy of the Contract which it may require.

## ARTICLE 8

### CEASE AND DESIST ORDER

In the event the Contractor fails or refuses to perform the Work as required herein, the Owner may instruct the Contractor to cease and desist from performing further Work in whole or in part.  Upon receipt of such instruction, the Contractor shall immediately cease and desist as instructed by the Owner and shall not proceed further until the cause for the Owner's instructions has been corrected, no longer exists, or the Owner instructs that the Work may resume.  In the event the Owner issues such instructions to cease and desist, and in the further event that the Contractor fails and refuses within seven (7) days of receipt of same to provide adequate assurance to the Owner that the cause of such instructions will be eliminated or corrected, then the Owner shall have the right, but not the obligation, to carry out the Work with its own forces, or with the forces of another contractor, and the Contractor shall be fully responsible and liable for the costs of performing such Work by the Owner.  In such case, an appropriate Change Order shall be issued deducting from the payment then or thereafter due the Contractor the cost of correcting such deficiencies, including the cost of the Architect's additional services made necessary by such default, neglect or failure.  If the payments then or thereafter due the Contractor are not sufficient to cover such amount, the Contractor shall pay the difference to the Owner.  The rights set forth herein are in addition to, and without prejudice to, any other rights or remedies the Owner may have against the Contractor.

---

## ARTICLE 9

## DUTIES, OBLIGATIONS AND RESPONSIBILITIES OF THE CONTRACTOR

9.1    Generally.   In addition to any and all other duties, obligations and responsibilities of the Contractor set forth in this Contract, the Contractor shall have and perform the following duties, obligations and responsibilities to the Owner:

9.1.1    The Contractor is again reminded of its continuing duties set forth in Subparagraph 3.1.5 which are by reference hereby incorporated in this Subparagraph 9.1.1. The Contractor shall not perform Work without adequate plans and specifications, or, as appropriate, approved shop drawings, or other submittals. If the Contractor performs Work knowing or believing it involves an error, inconsistency or omission in the Contract without first providing written notice to the Architect and Owner, the Contractor shall be responsible for such Work and pay the cost of correcting same.

9.1.2    All Work shall strictly conform to the requirements of this Contract.

9.1.3    The Work shall be strictly supervised, the Contractor bearing full responsibility for any and all acts or omissions of those engaged in the Work on behalf of the Contractor.

9.1.4    The Contractor shall obtain and pay for all required permits, fees and licenses customarily obtained by the Contractor. The Contractor shall comply with all legal requirements applicable to the Work.

9.1.5    The Contractor shall employ and maintain at the Project site only competent supervisory personnel. Key supervisory personnel assigned by the Contractor to this Project are as follows:

NAME

FUNCTION

_____          _____
_____          _____
_____          _____

So long as the individuals named above remain actively employed or retained by the Contractor, they shall perform the functions indicated next to their names unless the Owner agrees to the contrary in writing. In the event one or more individuals not listed above subsequently assumes one or more of those functions listed above, the Contractor shall be bound by the provisions of this Subparagraph 9.1.5 as though such individuals had been listed above.

9.1.6    The Contractor shall keep an updated copy of this Contract at the site. Additionally, the Contractor shall keep a copy of approved shop drawings and other submittals. All of these items shall be available to the Owner and the Architect at all regular business hours. Upon Final Completion of the Work, all of these items shall be finally updated and provided to the Owner and shall become the property of the Owner.

9.1.7    Shop drawings and other submittals from the Contractor do not constitute a part of the Contract. The Contractor shall not do any Work requiring shop drawings or other submittals unless such shall have been approved in writing by the Architect. All Work requiring approved shop drawings or other submittals shall be done in strict compliance with such approved documents. However, approval by the Architect or the Owner shall not be evidence that Work installed pursuant thereto conforms with the requirements of this Contract. The Owner and the Architect shall have no duty to review partial submittals or incomplete submittals. The Contractor shall maintain a submittal log which shall include, at a minimum, the date of each submittal, the date of any resubmittal, the date of any approval or rejection, and the

SPLOST Project No. 98-644-056                         Clarkston Middle School

reason for any approval or rejection. The Contractor shall carefully review, inspect and examine any and all submittals before submission of same to the Owner or the Architect.

9.1.8    The Contractor shall maintain the Project site in a reasonably clean condition during performance of the Work. Upon Final Completion, the Contractor shall thoroughly clean the Project site of all debris, trash and excess materials or equipment.

9.1.9    At all times relevant to this Contract, the Contractor shall permit the Owner and the Architect to enter upon the Project site and to review or inspect the Work without formality or other procedure.

9.2    Warranty.

9.2.1    The Contractor hereby warrants that all labor furnished under this Contract shall be competent to perform the tasks undertaken, that the product of such labor shall yield only first-class results, that all materials and equipment provided shall be new and of high quality, that the completed Work will be complete, of high quality, without defects, and that all Work strictly complies with the requirements of this Contract. Any Work not strictly complying with the requirements of this Subparagraph shall constitute a breach of the Contractor's warranty.

9.2.2    The Contractor shall provide any and all specific or special warranties or guarantees of materials, equipment, items, systems and other things as required elsewhere in this Contract.

9.3    Schedule for Completing Work.    The Contractor, within fifteen (15) days of commencing the Work, shall provide to the Owner and the Architect, and comply with, the Contractor's schedule for completing the Work. Such schedule shall be in a form acceptable to the Owner. The Contractor's schedule shall be updated no less frequently than monthly (unless the parties otherwise agree in writing) and shall be updated to reflect conditions encountered from time to time and shall apply to the total Project. Each such revision shall be furnished to the Owner and the Architect. Strict compliance with the requirements of this Paragraph 9.3 shall be a condition precedent to payment to the Contractor, and failure by the Contractor to strictly comply with said requirements shall constitute a material breach of this Contract.

## ARTICLE 10

## INDEMNITY

The Contractor shall indemnify and hold the Owner harmless from any and all claims, liability, damages, loss, cost and expense of every type whatsoever including, without limitation, attorneys' fees and expenses, in connection with the Contractor's performance of this Contract, provided that such claims, liability, damage, loss, cost or expense is due to sickness, personal injury, disease or death, or to loss or destruction of tangible property (other than the Work itself), including loss of use resulting therefrom, to the extent caused by the Contractor, or anyone for whose acts the Contractor may be liable, regardless of whether such liability, claim, damage, loss, cost or expense is caused in part by the Owner.

## ARTICLE 11

### THE PROJECT ARCHITECT

11.1  Architect.  The architect for this Project is R L Brown & Associates, Inc. (the "Architect"). In the event the Owner should find it necessary or convenient to replace the Architect, the Owner shall retain a replacement architect and the role of the replacement architect shall be the same as the role of the Architect.  Unless otherwise directed by the Owner in writing, the Architect will perform those duties and discharge those responsibilities allocated to the Architect in this Contract.  The duties, obligations and responsibilities of the Architect shall include, but are not limited to, the following:

11.1.1  Unless otherwise directed by the Owner in writing, the Architect shall act as the administrator of this Contract until final payment has been made, to the extent expressly set forth in this Contract.

11.1.2  Unless otherwise directed by the Owner in writing, the Owner and the Contractor shall communicate with each other in the first instance through the Architect.

11.1.3  When requested by the Contractor in writing, the Architect shall render interpretations necessary for the proper execution or progress of the Work.

11.1.4  The Architect shall draft proposed Change Orders.

11.1.5  The Architect shall approve, or respond otherwise as necessary concerning shop drawings or other submittals received from the Contractor.

11.1.6  The Architect shall be authorized to refuse to accept Work which is defective or otherwise fails to comply with the requirements of this Contract.  If the Architect deems it appropriate, the Architect shall be authorized to call for extra inspection or testing of the Work for compliance with requirements of this Contract.

11.1.7  The Architect shall review the Contractor's Payment Requests and shall approve in writing those amounts which, in the opinion of the Architect, are properly owing to the Contractor as provided in this Contract.

11.1.8  The Architect shall, upon written request from the Contractor, perform those inspections required in Article 6 herein above.

11.1.9  The Architect shall be authorized to require the Contractor to make changes which do not involve a change in the Contract Price or in the time for the Contractor's performance of this Contract consistent with the intent of this Contract.

11.1.10  The duties, obligations and responsibilities of the Contractor under this Contract shall in no manner whatsoever be changed, altered, discharged, released, or satisfied by any duty, obligation or responsibility of the Architect.  The Contractor is not a third-party beneficiary of any contract by and between the Owner and the Architect.  It is expressly acknowledged and agreed that the duties of the Contractor to the Owner are independent of, and are not diminished by, any duties of the Architect to the Owner.

## ARTICLE 12

## CLAIMS BY THE CONTRACTOR

12.1   _Generally_.  Claims by the Contractor against the Owner are subject to the following terms and conditions:

12.1.1   All Contractor claims against the Owner shall be initiated by a written claim submitted to the Owner and the Architect.  Such claim shall be received by the Owner and the Architect no later than seven (7) calendar days after the event, or the first appearance of the circumstances, causing the claim, and same shall set forth in detail all known facts and circumstances supporting the claim.

12.1.2   The Contractor and the Owner shall continue their performance hereunder regardless of the existence of any claims submitted by the Contractor.

12.1.3   In the event the Contractor discovers previously concealed and unknown site conditions which are materially at variance from those typically and ordinarily encountered in the general geographical location of the Project, the Contract Price shall be modified, either upward or downward, upon the written claim made by either party within seven (7) calendar days after the first appearance to such party of the circumstances.  As a condition precedent to the Owner having any liability to the Contractor due to concealed and unknown conditions, the Contractor must give the Owner and the Architect written notice of, and an opportunity to observe, such condition prior to disturbing it.  The failure by the Contractor to give the written notice and make the claim as provided by this Subparagraph 12.1.3 shall constitute a waiver by the Contractor of any rights arising out of or relating to such concealed and unknown condition.

12.1.4   In the event the Contractor seeks to make a claim for an increase in the Contract Price, as a condition precedent to any liability of the Owner therefor, the Contractor shall strictly comply with the requirements of Subparagraph 12.1.1 above and such claim shall be made by the Contractor before proceeding to execute any additional or changed Work.  Failure of the condition precedent to occur shall constitute a waiver by the Contractor of any claim for additional compensation.

12.1.5   In connection with any claim by the Contractor against the Owner for compensation in excess of the Contract Price, any liability of the Owner for the Contractor's cost shall be strictly limited to direct cost incurred by the Contractor and shall in no event include indirect cost or consequential damages of the Contractor.  The Owner shall not be liable to the Contractor for claims of third-parties including subcontractors, unless and until liability of the Contractor has been established therefor in a court of competent jurisdiction.

12.2   _Delays Generally_.  In the event the Contractor should be delayed in performing any task which at the time of the delay is then critical, or which during the delay becomes critical, as the sole result of any act or omission by the Owner or someone acting in the Owner's behalf, or by Owner-authorized Change Orders, fire or other Acts of God, the date for achieving Substantial Completion, or, as applicable, final completion, shall be appropriately adjusted by the Owner upon the written claim of the Contractor to the Owner and the Architect.  A task is critical within the meaning of this Paragraph 12.2 if, and only if, said task is on the critical path of the Project schedule so that a delay in performing such task will delay the ultimate completion of the Project.  Any claim for an extension of time by the Contractor shall strictly comply with the requirements of Subparagraph 12.1.1 above.  If the Contractor fails to make such claim as required in this Paragraph 12.2, any claim for an extension of time shall be waived.

12.3   _Weather Delays_.  The date for achieving Substantial Completion or, as applicable, final completion will not be extended due to bad weather (excepting bad weather which precludes access to the project site) after the Project is enclosed or for normal bad weather.  The time for Substantial

Completion as stated in the Contract includes an allowance for Working days (Monday through Friday) on which the Contractor agrees that he may expect to lose Working days due to bad weather, in accordance with the following table, on Work to be performed out-of-doors.

| | | | |
|---|---|---|---|
| January | 10 days | July | 4 days |
| February | 10 days | August | 2 days |
| March | 7 days | September | 2 days |
| April | 6 days | October | 3 days |
| May | 4 days | November | 5 days |
| June | 3 days | December | 9 days |

At the time the Project is enclosed, if the total accumulated number of Working days lost due to weather exceeds the total accumulated number derived from the table above, time for completion shall be extended by such excess. No change in the Contract Price will be authorized because of adjustment of contract time due to weather.

## ARTICLE 13

## SUBCONTRACTORS

Upon execution of this Contract, the Contractor shall identify to the Owner and the Architect, in writing, those parties intended as subcontractors on the Project. The Owner shall, in writing, state any objections the Owner may have to one or more of such subcontractors. The Contractor shall not enter into a subcontract with an intended subcontractor with whom the Owner objects. All subcontracts shall afford the Contractor rights against the subcontractor which correspond to those rights afforded to the Owner against the Contractor herein, including those rights of Contract termination as set forth hereinbelow. The Architect will not enter into disputes between the Contractor and any subcontractor or supplier, nor shall the Architect be called upon to settle same. Neither shall the Architect be called upon to enter into or to settle disputes between subcontractors and/or suppliers.

## ARTICLE 14

## CHANGE ORDERS

14.1   Generally.   One or more changes to the Work within the general scope of this Contract, may be ordered by Change Order. The Contractor shall proceed with any such changes, and same shall be accomplished in strict accordance with the following terms and conditions:

14.1.1   Change Order shall mean a written order to the Contractor executed by the Owner and the Architect after execution of this Contract, and approved by the Georgia Department of Education, directing a change in the Work and may include a change in the Contract Price or the time for the Contractor's performance, or any combination thereof.

14.1.2   The Owner will not be responsible for any change in the Work involving extra costs unless approval in writing is furnished by the Owner before such Work is begun. Note that the Architect does not have authority to order changes in the Work that involve changes in cost or time.

14.1.3   Any change in the Contract Price resulting from a Change Order shall be determined as follows:

(a)   By mutual agreement between the Owner and the Contractor as evidenced by (1) the change in the Contract Price being set forth in the Change Order, (2) such change in the Contract Price, together with any conditions or requirements relating thereto, being initialed by both parties and (3) the Contractor's execution of the Change Order, or,

(b)  If no mutual agreement occurs between the Owner and the Contractor, the change in the Contract Price, if any, shall be derived by determining the reasonable actual costs incurred or savings achieved, resulting from revisions in the Work. Such reasonable actual costs or savings shall include a component for overhead and profit. If, and to the extent, the change involves Work of one or more subcontractors, the overhead and profit component for subcontractors shall be seven and one-half percent (7 ½%) and the overhead and profit component for the Contractor shall be seven and one-half percent (7 ½%) of the amount allocable for subcontracted Work. If the change involves only Work of the Contractor, the component for overhead and profit shall be fifteen percent (15%). Any such costs or savings shall be documented in the format, and with such content and detail as the Owner or the Architect requires.

14.1.4  The execution of a Change Order by the Contractor shall constitute conclusive evidence of the Contractor's agreement to the ordered changes in the Work, this Contract as thus amended, the Contract Price and the time for performance by the Contractor. The Contractor, by executing the Change Order, waives and forever releases any claim against the Owner for additional time or compensation for matters relating to or arising out of or resulting from the Work included within or affected by the executed Change Order.

14.1.5  The Contractor shall notify and obtain the consent and approval of the Contractor's Surety with reference to all Change Orders if such notice, consent or approval are required by the Owner, the Architect, the Contractor's Surety or by law. The Contractor's execution of the Change Order shall constitute the Contractor's warranty to the Owner that the Surety has been notified of, and consents to, such Change Order and the Surety shall be conclusively deemed to have been notified of such Change Order and to have expressly consented thereto.

## ARTICLE 15

## DISCOVERING AND CORRECTING DEFECTIVE OR INCOMPLETE WORK

15.1  Work in Violation of Contract. In the event that the Contractor covers, conceals or obscures its Work in violation of this Contract or in violation of a directive from the Owner or the Architect, such Work shall be uncovered and displayed for the Owner's or Architect's inspection upon request, and shall be reworked at no cost in time or money to the Owner.

15.2  Work in Conformity with Contract. If any of the Work is covered, concealed or obscured in a manner not covered by Paragraph 15.1 above, it shall, if directed by the Owner or the Architect be uncovered and displayed for the Owner's or Architect's inspection. If the uncovered Work conforms strictly with this Contract, the costs incurred by the Contractor to uncover and subsequently, replace such Work shall be borne by the Owner. Otherwise, such costs shall be borne by the Contractor.

15.3  Defective or Nonconforming Work. The Contractor shall, at no cost in time or money to the Owner, correct Work rejected by the Owner or by the Architect as defective or failing to conform to this Contract. Additionally, the Contractor shall reimburse the Owner for all testing, inspections and other expenses incurred as a result thereof.

15.4  Duty to Correct Defective or Nonconforming Work. In addition to its warranty obligations set forth elsewhere herein, the Contractor shall be specifically obligated to correct any and all defective or nonconforming Work for a period of twelve (12) months following final completion upon written direction from the Owner. The Owner shall promptly notify Contractor of any noted defective or nonconforming Work. Contractor shall within two (2) working days respond by visiting the site and commencing, and promptly completing, any necessary remedial Work including needed maintenance instructions to Owner's personnel.

15.5    Owner's Option.   The Owner may, but shall in no event be required to, choose to accept defective or nonconforming Work.  In such event, the Contract Price shall be reduced by the greater of (a) the reasonable costs of removing and correcting the defective or nonconforming Work, and (b) the difference between the fair market value of the Project as constructed and the fair market value of the Project had it not been constructed in such a manner as to include defective or nonconforming Work.  If the remaining portion of the unpaid Contract Price, if any, is insufficient to compensate the Owner for the acceptance of defective or nonconforming Work, the Contractor shall, upon written demand from the Owner, pay the Owner such remaining compensation for accepting defective or nonconforming Work.

## ARTICLE 16

## TERMINATION BY THE CONTRACTOR

If the Owner repeatedly fails to perform its material obligations to the Contractor for a period of sixty (60) days after receiving written notice from the Contractor of its intent to terminate hereunder, the Contractor may terminate performance under this Contract by written notice to the Owner and the Architect.  If the Owner suspends Contractor's performance for a period of more than one hundred twenty (120) days, through no fault of the Contractor, then Contractor may, upon seven (7) days written notice to Owner, terminate this Contract.  In either event, the Contractor shall be entitled to recover from the Owner as though the Owner had terminated the Contractor's performance under this Contract for convenience pursuant to Paragraph 18.1 hereunder.

## ARTICLE 17

## OWNER'S RIGHT TO SUSPEND CONTRACTOR'S PERFORMANCE

17.1    Suspension.   The Owner shall have the right at any time to direct the Contractor to suspend its performance, or any designated part thereof, for any reason whatsoever, or without reason, for a cumulative period of up to one hundred twenty (120) calendar days.  If any such suspension is directed by the Owner, the Contractor shall immediately comply with same.

17.2    Compensation.   In the event the Owner directs a suspension of performance under this Article 17, through no fault of the Contractor, the Owner shall pay the Contractor as full compensation for such suspension the Contractor's reasonable costs, actually incurred and paid, of:

17.2.1   demobilization and remobilization, including such costs paid to subcontractors.

17.2.2   preserving and protecting Work in place.

17.2.3   storage of materials or equipment purchased for the Project, including insurance thereon.

17.2.4   performing in a later, or during a longer, time frame than that contemplated by this Contract.

## ARTICLE 18

## TERMINATION BY THE OWNER

18.1    Termination for Convenience.   The Owner may, for any reason whatsoever, terminate performance under this Contract by the Contractor for convenience.  The Owner shall give written notice of such termination to the Contractor specifying when termination becomes effective.  The Contractor shall incur no further obligations in connection with the Work and the Contractor shall stop Work when such

---

termination becomes effective.  The Contractor shall also terminate outstanding orders and subcontracts. The Contractor shall settle the liabilities and claims arising out of the termination of subcontracts and orders.  The Owner may direct the Contractor to assign the Contractor's right, title and interest under termination orders or subcontracts to the Owner or its designee.  The Contractor shall transfer title and deliver to the Owner such completed or partially completed Work and materials, equipment, parts, fixtures, information and Contract rights as the Contractor has.  When terminated for convenience, the Contractor shall be compensated as follows:

18.1.1   The Contractor shall submit a termination claim to the Owner and the Architect specifying the amounts due because of the termination for convenience together with costs, pricing or other data required by the Owner or the Architect.  If the Contractor fails to file a termination claim within one (1) year from the effective date of termination, the Owner shall pay the Contractor, an amount derived in accordance with Subparagraph 18.1.3 below.

18.1.2   The Owner and the Contractor may agree to the compensation, if any, due to the Contractor hereunder.

18.1.3   Absent agreement to the amount due to the Contractor, the Owner shall pay the Contractor the following amounts:

(a)   Contract prices for labor, materials, equipment and other services accepted under this Contract;

(b)   Reasonable costs incurred in preparing to perform and in performing the terminated portion of the Work, and in terminating the Contractor's performance; plus a fair and reasonable allowance for direct jobsite overhead and profit thereon (such profit shall not include anticipated profit or consequential damages); provided however, that if it appears that the Contractor would have not profited or would have sustained a loss if the entire Contract would have been completed, no profit shall be allowed or included and the amount of compensation shall be reduced to reflect the anticipated rate of loss, if any;

(c)   Reasonable costs of settling and paying claims arising out of the termination of subcontracts or orders pursuant to Paragraph 18.1 of this Paragraph.  These costs shall not include amounts paid in accordance with other provisions hereof.

The total sum to be paid the Contractor under this Paragraph 18.1 shall not exceed the total Contract Price, as properly adjusted, reduced by the amount of payments otherwise made, and shall in no event include duplication of payment.

18.2   Termination for Cause.  If the Contractor does not perform the Work, or any part thereof, in a timely manner, supply adequate labor, supervisory personnel or proper equipment or materials, or if it fails to timely discharge its obligations for labor, equipment and materials, or proceeds to disobey applicable law, or fails to comply with Contract safety and loss prevention requirements, or otherwise commits a violation of a material provision of this Contract, then the Owner, in addition to any other rights it may have against the Contractor or others, may terminate the performance of the Contractor and assume possession of the Project site and of all materials and equipment at the site and may complete the Work.  In such case, the Contractor shall be paid further until the Work is complete.  After final completion has been achieved, if any portion of the Contract Price, as it may be modified hereunder, remains after the cost to the Owner of completing the Work, including all costs and expenses of every nature incurred, has been deducted by the Owner, such remainder shall belong to the Contractor.  Otherwise, the Contractor shall pay and make whole the Owner for such cost.  This obligation for payment shall survive the termination of the Contract.  In the event the employment of the Contractor is terminated by the Owner for cause pursuant to this Paragraph 18.2 and it is subsequently determined by a Court of competent jurisdiction that such termination was without cause, such termination shall thereupon be

deemed a Termination for Convenience under Paragraph 18.1 and the provisions of Paragraph 18.1 shall apply.

18.3    <u>Termination Not Subject to Article 12</u>.    Termination of this Contract by the Owner is not subject to the procedures set forth in Article 12.

**ARTICLE 19**

**INSURANCE**

The Contractor shall have and maintain insurance in accordance with the requirements of EXHIBIT "A" attached hereto and incorporated herein by reference.

**ARTICLE 20**

**SURETY BONDS**

The Contractor shall furnish separate performance and payment bonds to the Owner. Each bond shall set forth a penal sum in an amount equal to the Contract Price. Each bond furnished by the Contractor shall incorporate by reference the terms of this Contract as fully as though they were set forth verbatim in such bonds. In the event the Contract Price is adjusted by Change Order executed by the Contractor, the penal sum of both the performance bond and the payment bond shall be deemed increased by like amount. The performance and payment bonds furnished by the Contractor shall be in form suitable to the Owner and shall be executed by a Surety, or Sureties, reasonably acceptable to the Owner.

**ARTICLE 21**

**PROJECT RECORDS**

All documents relating in any manner whatsoever to the Project, or any designated portion thereof, which are in the possession of the Contractor, or any subcontractor of the Contractor, shall be made available to the Owner or the Architect for inspection and copying upon written request by the Owner. Furthermore, said documents shall be made available, upon request by the Owner, to any state, federal or other regulatory authority and any such authority may review, inspect and copy such records. Said records include, but are not limited to, all drawings, plans, specifications, submittals, correspondence, minutes, memoranda, tape recordings, videos, photographs, estimates, invoices, bills, receipts, cancelled checks, vouchers or other writings or things which document or involve in any manner the Project, its cost, and its construction. Said records expressly include those documents reflecting the cost of construction to the Contractor and its Subcontractors. The Contractor shall maintain and protect these documents for no less than four (4) years after final completion of the Project, or for any longer period of time as may be required by law or good construction practice.

**ARTICLE 22**

**APPLICABLE LAW**

The law applicable to this Contract shall be the law of the State of Georgia.

## ARTICLE 23

### SUCCESSORS AND ASSIGNS

Each party binds itself, its successors, assigns, executors, administrators or other representatives to the other party hereto and to successors, assigns, executors, administrators or other representatives of such other party in connection with all terms and conditions of this Contract.  The Contractor shall not assign this Contract without prior written consent of the Owner.


*OWNER:*

DEKALB COUNTY BOARD OF EDUCATION

By: _____ [Seal]
        *[SIGNATURE]*

__James R. Hallford, Superintendent__
*[TYPED NAME & TITLE]*


__DeKalb County Board of Education__
__3770 North Decatur Road__
__Decatur, Georgia  30032__


__JUNE 2, 1999__
        *[DATE OF EXECUTION]*


*CONTRACTOR:*

LATCO CONSTRUCTION COMPANY, INC.
        *[TYPED NAME]*

By: _____ [Seal]
        *[SIGNATURE]*

__Lat Nguyen, President__
        *[TYPED NAME & TITLE]*


__Latco Construction Company, Inc.__
__P. O. Box 49448__
__Atlanta, Georgia 30359-1448__
        *[ADDRESS]*


__April 20, 1999__
*[DATE OF EXECUTION]*

---

SPLOST Project No. 98-644-056
18
Clarkston Middle School